IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK NELSON,<br><br>Defendant. | No. CR12-2024<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................... 1

II.  PROCEDURAL HISTORY ............................ 2

III. ISSUES PRESENTED .............................. 2

IV.  RELEVANT FACTS ................................ 2

V.   DISCUSSION .................................... 5
     A.  Was Defendant Adequately Advised of His Miranda Rights? ...... 5
     B.  Was Defendant's Waiver of his Miranda Rights
         Voluntary, Knowing, and Intelligent? ..................... 8

VI.  RECOMMENDATION ............................... 11

## I. INTRODUCTION

On the 19th day of February 2013, this matter came on for hearing on the Motion to Suppress Statements Made While Under the Influence of Heroin (docket number 159) filed by the Defendant on February 4, 2013, as supplemented by the Amended Motion [to] Suppress Statements (docket number 167), filed on February 19. The Government was

represented by Special Assistant United States Attorney Lisa C. Williams. Defendant Frank Nelson appeared in court and was represented by his attorney, Mark C. Meyer.

## II. PROCEDURAL HISTORY

On August 22, 2012, Defendant Frank Nelson was charged by Indictment with conspiracy to distribute heroin. At his initial appearance and arraignment on September 5, Defendant entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on November 5. Because the case is complex and involves multiple defendants, however, the trial was rescheduled for March 25, 2013. A status hearing is set for February 27.

On February 4, 2013, Defendant timely filed the instant motion to suppress. The Government filed its resistance on February 15, 2013. On February 18, Defendant asked for leave to amend his motion. The Government having no objection, the motion was granted.

## III. ISSUES PRESENTED

In his motion to suppress, Defendant contends that "although he was apprised of his *Miranda* rights, he did not knowingly and intelligently waive them because he was under the influence of heroin when he was arrested and detained and interrogated."[1] In his amended motion to suppress, Defendant asserts that the *Miranda* warning was defective because he "was not orally advised of his right to the presence of counsel during the interrogation."[2]

## IV. RELEVANT FACTS

On August 22, 2012, a grand jury returned an Indictment (docket number 15) charging Defendant Frank Nelson and 13 others with various drug offenses. Bryan Furman, an officer with the Cedar Rapids Police Department who is currently assigned to the DEA task force, testified that authorities planned to execute simultaneous arrests on

---

[1] Motion to Suppress (docket number 159) at 1.

[2] Amended Motion [to] Suppress (docket number 167) at 1.

September 5, 2012. There were 14 defendants, and at least two agents were assigned to each defendant. Furman and his partner, Task Force Officer Kelly Meggers, were assigned to the Black Hawk County Jail, where the defendants were brought following their arrests. The defendants were then transported to the United States Courthouse in Cedar Rapids, where they were seen by a federal judge.[3]

Following Defendant's arrest on September 5, he was interviewed by Task Force Officer Furman in a holding cell at the Black Hawk County Jail at approximately 11:00 a.m. Defendant was not in restraints at that time and the door to the cell was not locked, but, obviously, Defendant was not free to leave. Furman was in street clothes and unarmed. An audio recording of the interview, which lasted approximately 17 minutes, was introduced as Government's Exhibit 1. Furman testified that Task Force Officer Meggers was "in and out" of the holding cell, and she can be heard on the recording, but she did not participate in the interview. No other officers were in the cell with Furman and Defendant.

According to Furman, Defendant "wasn't happy" to be there and was "kind of disconnected because he had been arrested." Defendant appeared "tired," and Furman speculated at the hearing that "maybe he was drug out of bed; something of that nature." However, according to Furman, Defendant did not display any physical signs of illness. For example, he was not sweating or coughing. Defendant never told Furman that he was ill, and never asked for any medical attention.

At the beginning of the interview, Task Force Officer Furman advised Defendant of his *Miranda* rights. Furman can be heard on the audio recording telling Defendant:

> Are you familiar with your rights? You have the right to remain silent. Anything you say can and will be used against you. You have a right to an attorney. If you can't afford one, the court will give you one. And if we start talking you can stop talking at any time.

---

[3] Nelson and seven other defendants were seen by me on September 5 at 4:30 p.m. *See* docket number 50.

It appears from the recording that Furman's attention was then drawn away from Defendant for approximately 30 seconds. When Furman resumed the interview, he stated: "Okay, we can start, and if you want to stop at any time, that's up to you. Sound good?" While Defendant apparently made no audible reply to Furman's question, or the earlier *Miranda* warning, Defendant maintained eye contact with Furman, and responded to questioning. Defendant spoke softly in responding to Furman's questions and, at times, it was difficult to hear him. According to Furman, Defendant "mumbled a lot," and it was necessary for Furman to say "what's that?" on several occasions.

It is clear that Task Force Officer Furman was attempting to gain Defendant's cooperation. In that regard, Furman attempted to explain the concept of "acceptance of responsibility." Furman first told Defendant that "you know, with state charges, that sitting here talking to me isn't going to help you." Regarding federal charges, however, "when you agree to cooperate it's the first step towards the court recognizing you as taking acceptance for being involved in this." Furman advised Defendant that by responding to questions he was on a "perfect road" to continue to cooperate.

At the hearing, Task Force Officer Furman conceded that officers knew Defendant was addicted to heroin. During the interview, Defendant admitted using two or three bags of heroin daily. He also stated that he had used heroin that morning. Furman testified, however, that he did not have any concerns about Defendant's ability to understand his questions. Furman testified that *if* Defendant had seemed to be unresponsive, then Furman would have sought medical attention. According to Furman, regular users of heroin actually function better when they are using and, in fact, you sometimes can't tell that a person is addicted to heroin.

At times, Defendant can be heard sighing prior to answering Task Force Officer Furman's questions. For example, Defendant sighed prior to answering a question about when he became addicted. Later, he sighed before answering a question regarding his cousin's involvement with heroin. Furman testified that in his experience, it is not uncommon for a subject to sigh before answering a question. Sometimes it reflects the

4

person gathering his thoughts prior to answering, and sometimes it shows a reluctance by the witness to answer. In any event, there is no evidence in this case that it reflected any medical issue.

## V. DISCUSSION

In his motion and amended motion, Defendant raises two issues. In his amendment, Defendant questions whether Task Force Officer Furman adequately advised him of his *Miranda* rights. In his original motion, Defendant asserts that his waiver of those rights was not voluntary, knowing, and intelligent.

### A. Was Defendant Adequately Advised of His Miranda Rights?

Defendant first argues that he was not adequately advised of his *Miranda* rights. Specifically, Defendant complains that "he was not orally advised of his right to the presence of counsel during the interrogation."[4] It is undisputed — as reflected on the audio recording of the interview and set forth in the facts above — that Defendant was told "you have a right to an attorney. If you can't afford one, the court will give you one." Defendant argues, however, that he must be told he has the right to the *presence* of an attorney, and that if he cannot afford one, an attorney will be appointed *prior to any questioning*.

Defendant concedes that the Eighth Circuit Court of Appeals has ruled adversely to his position on similar facts. In *United States v. Caldwell*, 954 F.2d 496 (8th Cir. 1992), the defendant was advised of his rights in virtually identical terms to those used here by Task Force Officer Furman. Caldwell argued that he was inadequately advised of his *Miranda* rights because although the officer told him he had the right to an attorney, "he failed to tell him when that right accrued or that he had the right to consult with an attorney before and during his interrogation." *Id.* at 499. The Eighth Circuit rejected Caldwell's argument, finding "this court has not strictly required that a defendant be explicitly advised of his right to an attorney before and during questioning." *Id.* at 502.

---

[4] Amended Motion [to] Suppress (docket number 167) at 1.

5

*Miranda* does not require a "precise formulation" of the warnings or any "talismanic incantation." *Id.* at 501-02 (quoting *California v. Prysock*, 453 U.S. 355, 359 (1981)).

Nonetheless, Defendant asserts that *Caldwell* has been "called into doubt" by the United States Supreme Court's recent decision in *Florida v. Powell*, 559 U.S. 50 (2010). There, the defendant was advised that "you have the right to talk to a lawyer before answering any of our questions," and that he could use his rights "at any time you want during this interview." 559 U.S. at ____, 130 S. Ct. at 1200. Powell argued that the warnings were inadequate, however, "because they did not adequately convey his right to the presence of an attorney during questioning." *Id.* The Supreme Court concluded that the warning satisfied the dictates of *Miranda*. The Court noted that Powell was told that he could consult with a lawyer before answering any particular question, and that he could exercise that right while the interrogation was underway. "In combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 1205. When telling Powell that he had the right to talk to a lawyer "before" answering any questions, the officer "merely conveyed when Powell's right to an attorney became effective — namely, before he answered any questions at all. Nothing in the words used indicated that counsel's presence would be restricted after the questioning commenced." *Id.* Instead, Powell was explicitly told that he could exercise his rights at any time during the interview. "Although the warnings were not the *clearest possible* formulation of *Miranda*'s right-to-counsel advisement, they were sufficiently comprehensive and comprehensible when given a commonsense reading." *Id.*

Turning to the facts in the instant action, the *Miranda* warning given to Nelson was substantially less informative. That is, Nelson was told that he has "a right to an attorney," but was not told *when* that right attaches. Specifically, he was not told that an attorney would be appointed before any questioning. *Compare Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) (holding that prior to a custodial interrogation, an individual must be advised, among other things, that he has the right to the "presence" of an

6

attorney, and if he can't afford one, then an attorney "will be appointed for him prior to any questioning"). Furthermore, while Nelson was told that he could "stop talking at any time," he was *not* advised that he could similarly invoke his right to an attorney at any time. *Miranda* instructs that the "[o]pportunity to exercise these rights must be afforded to him throughout the interrogation." 384 U.S. at 479.

In *Caldwell*, the Eighth Circuit rejected the defendant's argument that he must be explicitly advised of his right to an attorney before and during questioning. The warning given to Nelson here is indistinguishable from that given to Caldwell. If *Caldwell* is still good law, then Nelson's claim of an inadequate warning fails. The question then becomes whether, if called upon to address this issue after the Court's holding in *Powell*, the Eighth Circuit would reach the same conclusion it did in *Caldwell*.

The Supreme Court states in *Powell* that its judgment is "inform[ed]" by its decisions in *California v. Prysock*, 453 U.S. 355 (1981), and *Duckworth v. Eagan*, 492 U.S. 195 (1989). In those cases, as in *Powell*, the Court found the suspect was adequately advised of his *Miranda* rights, despite the officers' failure to strictly comply with the language of *Miranda*. Nelson notes in his brief, however, that in all three cases the suspect was informed that he had the right to talk to a lawyer *before* answering any questions. Here, Nelson was told that he has a right to an attorney, but was not told *when* that right attaches.

The Eighth Circuit was familiar, of course, with the decisions in *Prysock* and *Duckworth* when it reached its opinion in *Caldwell*. The *Caldwell* Court noted specifically that the suspects in *Prysock* and *Duckworth* were told that they had a right to an attorney before questioning. *Caldwell*, 954 F.2d at 502 ("It is true that the warnings given in both *Prysock* and *Duckworth* specifically stated that the suspect had a right to an attorney before questioning. . . ."). Nonetheless, the Court concluded that the warning given to Caldwell — which is virtually identical to the one given to Nelson here — satisfied the requirements of *Miranda*.

7

> It is apparent that the warning in this case does not suffer from the inadequacy discussed in both *Duckworth* and *Prysock*, namely, linking the right to appointed counsel to a future point in time after interrogation. When the only claimed deficiency is that of generality, the teaching of *Duckworth* that we are not construing a will or defining the terms of an easement convinces us that we cannot hold the warning in this case amounts to plain error.

*Caldwell*, 954 F.2d at 502.

It may be that if called upon to revisit this issue, the Eighth Circuit will conclude that *Miranda* requires an individual to be specifically advised that he has the right to consult with a lawyer prior to questioning and to have the lawyer with him during interrogation. That is, the Court may overturn *Caldwell* — i.e., "this court has not strictly required that a defendant be explicitly advised of his right to an attorney before and during questioning" — or it may not. After all, the decisions in *Prysock* and *Duckworth* (upon which the Supreme Court informed its judgment in *Powell*), and *Miranda* itself, were known to the Eighth Circuit when it reached its judgment in *Caldwell*.

I do not believe that *Powell compels* an overturning of *Caldwell*, however, and it is not for this Court to "reverse" the Court of Appeals. Because the warning given in *Caldwell* is virtually identical to the warning given here, I believe the holding in *Caldwell* controls the result on this issue. Therefore, based on Eighth Circuit precedent, I recommend the Court find that Nelson was adequately advised of his *Miranda* rights.

### B. Was Defendant's Waiver of his Miranda Rights Voluntary, Knowing, and Intelligent?

Defendant next argues that because he was under the influence of heroin, the waiver of his *Miranda* rights was not voluntary, knowing, and intelligent.[5] The question of

---

[5] Defendant apparently concedes that he waived his *Miranda* rights. At the time of hearing, Defendant's counsel elicited testimony from Task Force Officer Furman that Nelson did not audibly respond to Furman's recitation of his rights. However, a waiver need not be an express waiver. *Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250, 2261 (2010) ("[A] waiver of *Miranda* rights may be implied through 'the
(continued...)

whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent has "two distinct dimensions."

> First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

*United States v. Gayekpar*, 678 F.3d 629, 638 (8th Cir. 2012) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In determining whether a suspect's waiver is valid, the Court considers the totality of the circumstances. *Id.*

Preliminarily, the Court notes that Defendant makes no claim of "intimidation, coercion, or deception," nor could he. Defendant was questioned by only one officer, although a second officer was "in and out" of the room. As reflected on the audio recording, Task Force Officer Furman did not raise his voice, and there is no indication he physically intimidated Defendant in any way. The interview was short (only about 17 minutes) and there is no evidence Defendant was deprived of food, drink, or bathroom privileges. While Defendant was questioned in a holding cell, he was not otherwise restrained.

Defendant argues, however, that because he had used heroin that day, his waiver of his rights was not voluntary and knowing. While a defendant's mental status is a factor to be considered in determining whether a waiver is voluntary and knowing, drug usage does not automatically render a waiver involuntary. *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990) (discussing voluntariness in the context of a confession). Rather, the test is whether mental impairments, such as intoxication and fatigue, "cause the defendant's will to be overborne." *Id.* There are two factors which must be

---

[5](...continued)
defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver'") (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). Here, Defendant does *not* argue that he did not waive his *Miranda* rights.

9

considered in applying the "overborne will" doctrine: "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." *United States v. Meirovitz*, 918 F.3d 1376, 1379 (8th Cir. 1990).[6] Here, Defendant apparently argues that his will was more easily overborne due to heroin intoxication.

In *United States v. Howard*, 532 F.3d 755 (8th Cir. 2008), the defendant claimed that because he was "high," statements made following his arrest were involuntary. Citing *Casal*, the Court noted that "[s]imply because Howard was under the influence of drugs does not automatically render his confession involuntary. Rather, Howard must show his intoxication caused his will to be *overborne*." *Id.* at 763. Howard was coherent and spoke in a manner which indicated he understood what was happening, and he had previous experience with law enforcement. Nothing in the record indicated that "his state of intoxication was so severe his will was overborne." *Id. See also United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) ("Sleeplessness, alcohol use and drug use are relevant to our analysis, but 'intoxication and fatigue do not automatically render a confession involuntary.'") (citing *Casal*); *United States v. Givens*, 712 F.2d 1298, 1302 (8th Cir. 1983) (finding the defendant's statements were given voluntarily, notwithstanding the fact that "[t]he evidence clearly established that Fox used a variety of drugs on a regular basis and could have been intoxicated at the time of his interrogation").

In considering the totality of the circumstances in this case, there is no evidence to support a finding that Nelson's "will was overborne." Nelson was questioned briefly in a non-threatening manner. While diminished capacity to resist pressure to waive his rights is a factor which the Court must consider, the Court must also consider the conduct of the police. *United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995). While Task Force Officer Furman encouraged Defendant to cooperate, the statements were not of such

---

[6] While *Meirovitz* addressed the issue of "overborne will" in a confession context, rather than a waiver of rights context, the involuntariness argument is reviewed under the same standard — whether it involves waiver of a Fifth Amendment privilege, waiver of *Miranda* rights, or consent to search. *United States v. Makes Room*, 49 F.3d 410, 414 (8th Cir. 1995).

a nature or duration as to constitute "coercive activity," or to cause Defendant's will to be overborne.

Furthermore, even assuming Defendant was truthful in describing his drug usage, there is no evidence Defendant did not understand the nature of his rights or the consequences of his waiver. Task Force Officer Furman credibly testified that Nelson maintained eye contact with him throughout the interview and appeared to understand what was being said. While Defendant spoke slowly and softly, his answers were responsive to the questions. Moreover, there is no evidence that Defendant doesn't always speak in a soft and deliberate manner. At one point during the interview, Defendant demonstrated his understanding by saying "it sounds like you're trying to hook me up with a conspiracy."[7]

While the Government must prove by a preponderance of the evidence that Nelson waived his *Miranda* rights, *Colorado v. Connelly*, 479 U.S. 157, 168 (1986), a defendant who claims the involuntariness of his waiver must show his intoxication caused his will to be overborne. *Howard*, 532 F.2d at 763. I believe Nelson has failed to meet that burden here.[8]

## VI. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that Defendant's Motion to Suppress (docket number 159) as amended (docket number 167), be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must*

---

[7] Audio recording of interview (Government's Exhibit 1) at 11:30.

[8] Defendant does *not* claim his statements were not voluntary. If such a claim had been made, however, the analysis would follow closely the voluntariness argument regarding his *Miranda* waiver. *United States v. Makes Room*, 49 F.3d 410, 414 (8th Cir. 1995) (noting that an involuntariness argument based on *Miranda*, or the Fifth Amendment "proper," are reviewed under the same standard).

*arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections."* Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on February 19, 2013.

DATED this 22nd day of February, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA